UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
DAVID G. McKAY, individually, JAMIE E. GALAN-
McKAY, individually, DAVID G. McKAY and JAMIE E.
GALAN-McKAY, as parents and natural guardians of D.H., a
minor child,

                        Plaintiffs,                        **OPINION AND ORDER**

       - against -                                    No. 12-CV-3077 (CS)

THE VILLAGE OF SPRING VALLEY, a Municipality of the
State of New York; SPRING VALLEY POLICE
DEPARTMENT; JOHN DOES/JANE DOES "1" through "8"
being and intended to be unknown Police Officers or law
enforcement personnel, acting individually and in their Official
Capacities,

                        Defendants.
-------------------------------------------------------------------------x

Appearances:
Stephen M. Honan
Feerick Lynch MacCartney PLLC
South Nyack, New York
*Counsel for Plaintiffs*

Brian S. Sokoloff
Melissa L. Holtzer
Sokoloff Stern LLP
Carle Place, New York
*Counsel for Defendants*

Seibel, J.

       Before the Court is the Motion for Summary Judgment of Defendants Village of Spring Valley ("the Village"), Spring Valley Police Department ("SVPD"), and John Does/Jane Does "1" through "8", (Doc. 14). For the following reasons, Defendants' Motion is GRANTED.

**I.**       **Background**

1

Plaintiffs commenced this matter by filing a complaint in the Rockland County Supreme Court on April 6, 2012. (Holtzer Decl. Ex. A.)[1]  Plaintiffs alleged a cause of action under 42 U.S.C. § 1983 for the violation of their rights under the Fourth and Fourteenth Amendments of the Constitution, claiming that the Village had a practice and policy to overlook civil rights abuses by its officers, and had failed to supervise and train its officers to prevent civil rights abuses.  Plaintiffs also filed claims under state law for false arrest and imprisonment, assault, battery, and additional "state common law" claims.  The complaint stems from the wrongful entry of several members of the United States Drug Enforcement Agency ("DEA") and one member of the SVPD into Plaintiffs' residence when the officers executed an arrest warrant on the wrong home.  On April 19, 2012, Defendants filed a Notice of Removal, removing the matter to federal court. (Doc. 1.)  Plaintiffs bring this claim against the Village, SVPD, and John Does/Jane Does "1" through "8."[2]

The following facts are undisputed, except where noted.  Officer Kimberly Gray has worked for the SVPD since June 2003. (Ds' 56.1 ¶ 6; Ps' Reply 56.1, at 2-3.)[3]  Before joining the SVPD, Officer Gray attended the Rockland County Police Academy, where she received training regarding the Fourth Amendment. (Ds' 56.1 ¶¶ 7-8; Ps' Reply 56.1, Counter Statement ¶ 34.)  Upon completing her studies, Officer Gray joined the SVPD, and worked with a training

---

[1] "Holtzer Decl." refers to the Declaration of Melissa L. Holtzer in Support of Defendants' Motion for Summary Judgment. (Doc. 15.)

[2] It is well established that departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and may not sue or be sued. *See Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002). A police department that does not exist separate and apart from a municipality lacks its own legal identity. *Manning v. Cnty. of Westchester*, No. 93-CV-3366, 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995). Thus, the SVPD is not a proper party. *See Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 438 (S.D.N.Y. 2012). Further, Plaintiffs have not named the John Doe/Jane Doe defendants, and they therefore are dismissed from the case. *See Tsesarskaya v. City of N.Y.*, 843 F. Supp. 2d 446, 450 n.1 (S.D.N.Y. 2012).

[3] "Ds' 56.1" refers to Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1. (Doc. 17.) "Ps' Reply 56.1" refers to Plaintiffs' Response to Defendants Statement of Undisputed Material Facts & Plaintiffs' Counter Statement of Material Facts. (Doc. 25.)

officer for six months.  (Ds' 56.1 ¶ 9; Ps' Reply 56.1, at 4.)  During her time with the SVPD, she has attended in-service training on a variety of subjects.  (Ds' 56.1 ¶ 10; Ps' Reply 56.1, at 4.)

On January 13, 2011, Officer Gray was specially assigned to a DEA-organized operation.  (Ds' 56.1 ¶¶ 11-12; Ps' Reply 56.1, at 5.)  This was not part of Officer Gray's daily tour, and she was the only SVPD officer on the team.  (Ds' 56.1 ¶¶ 12, 14; Ps' Reply 56.1, at 5-6.)  She knew that the team's goal was to travel to an address and effectuate an arrest warrant, but was not aware of the address and did not see the warrant that the team was assigned to execute.  (Ds' 56.1 ¶¶ 15-16; Ps' Reply 56.1, at 6-7.)  Officer Gray understood that her function was to "be present" during the operation.  (Ds' 56.1 ¶ 24.)  Officer Gray traveled with other officers in an unmarked police car to Sharon Drive in Spring Valley, arriving at approximately 5:30 a.m.  (*Id.* ¶¶ 19-21; Ps' Reply 56.1, at 9.)  Officer Gray did not know how the location was chosen, and was not sure if she even knew of the location before she arrived because "we [the SVPD] weren't running the operation."  (Ds' 56.1 ¶¶ 22-23; Ps' Reply 56.1, at 10.)  Officer Gray followed behind the other officers when they approached the residence.  (Ds' 56.1 ¶¶ 26-27; Ps' Reply 56.1, at 11-12.)

David McKay opened the door to the home without the officers having to use any kind of breaching tool.  (Ds' 56.1 ¶¶ 29-30; Ps' Reply 56.1, at 12-13.)  Plaintiffs were seated on the couch in the living room when Officer Gray entered.  (Ps' Reply 56.1, at 15.)[4]  Jamie Galan-McKay was dressed in underwear and a shirt, and after receiving permission from the officers, moved towards the kitchen to get dressed.  (Ds' 56.1 ¶¶ 35-37; Ps' Reply 56.1, at 14-15.)  When a male officer began to follow Ms. Galan-McKay into the kitchen, Ms. Galan-McKay indicated that she would rather Officer Gray accompany her because Officer Gray was the only female

---

[4] Plaintiffs claim that the officers engaged in aggressive behavior, including removing Plaintiffs from their beds at gunpoint and threatening to "shoot and kill" their dogs if they were "non-compliant."  (Holtzer Decl. Ex. A, at 6.)  Plaintiffs do not allege that Officer Gray took part in these activities.

3

officer present.  (Ds' 56.1 ¶ 39; Ps' Reply 56.1, at 15-16.)  Ms. Galan-McKay dressed in another room, and Officer Gray escorted her back to the living room before departing shortly thereafter. (Ds' 56.1 ¶¶ 41-43; Ps' Reply 56.1, at 16-17.)  Officer Gray did not touch Plaintiffs or their property, and Plaintiffs do not recall Officer Gray drawing a gun at any point.  (Ds' 56.1 ¶¶ 45-47; Ps' Reply 56.1, at 18.)  The only other thing Officer Gray did was ask the occupants, as did the other officers, if someone named Michael was present.  (Ps' Reply 56.1, Counter Statement ¶¶ 21-28.)  The officers realized that they had entered the wrong residence – 36 Sharon Drive rather than 46 Sharon Drive – and thereafter departed.  (*Id.* ¶ 72.)

## II.  Discussion

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the

jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).  Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

      B.    <u>Plaintiffs' 42 U.S.C. § 1983 Claim</u>

Plaintiffs allege that the Village is liable for the violation of their rights under the Fourth and Fourteenth Amendments because the Village had a practice and policy to overlook civil rights abuses by its officers, and failed to supervise and train its officers to prevent these abuses.  Municipalities may be sued directly for constitutional violations pursuant to 42 U.S.C. § 1983,

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), but they cannot be held liable for acts of their employees "by application of the doctrine of *respondeat superior*," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *accord Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) (municipality may not be found liable simply because employee committed tort). Rather, a plaintiff must show that a violation of his constitutional rights resulted from a municipal policy or custom. *Monell*, 436 U.S. at 694. A plaintiff may plead the existence of such a policy or custom in one of four ways:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Peterec v. Hilliard*, No. 12-CV-3944, 2013 WL 5178328, at *10-11 (S.D.N.Y. Sept. 16, 2013) (quoting *Moray v. Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)). Plaintiffs have not adduced sufficient facts to avoid summary judgment under any of these theories.

First, there can be no *Monell* liability absent an underlying constitutional violation. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). The touchstone of the Fourth Amendment is reasonableness. *See, e.g.*, *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). Plaintiffs provide no authority for the proposition that a local officer, essentially along for the ride while federal agents conduct an operation in her municipality, acts unreasonably in relying on the federal agents' representations regarding the proper location. The Supreme Court has held that officers called upon to assist other officers in executing warrants are entitled to assume that the requesting officers are acting legally. *See Whiteley v. Warden*, 401 U.S. 560, 568

6

(1971).[5] Put differently, an officer tagging along does not act unreasonably if she does not independently verify what the agents in charge would be doing whether she was present or not. Indeed, it would effectively cripple semi-military organizations like police departments if the privates could refuse to act unless they reviewed the basis for the generals' orders. The Fourth Amendment rights of Plaintiffs may well have been violated here, but that violation was not caused by Officer Gray. She did not act unreasonably in failing to second-guess the DEA agents, and Plaintiffs have provided no authority suggesting otherwise.[6]

Even if Officer Gray could be said to have violated Plaintiffs' Fourth Amendment rights, the Village would not be liable. Plaintiffs have failed to put any meat on the bones of the conclusory "boilerplate" language in the Complaint that courts have held to be insufficient. *See, e.g.*, *Bess v. City of N.Y.*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013); *Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 259 (S.D.N.Y. 1999). Plaintiffs cannot and do not argue that their rights were violated by a formal custom or official policymaker, so any municipal liability must rest on a custom so widespread as to amount to a policy, or on a failure to train or supervise. Aside from referring to "the legion of cases" nationwide where officers enter the wrong address, (Ps' Opp. 5),[7] Plaintiffs describe no other such instances involving Village employees, nor any other conduct that could amount to a policy. Municipal agencies "may not be held liable under [Section] 1983 simply for the isolated unconstitutional acts of its employees." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). Thus, the

---

[5] To be sure, *Whiteley* said the fruits of the arrest would be suppressed in the criminal case if the requesting officers turned out to be wrong, but it did not suggest that the assisting officers would be civilly liable under Section 1983. *See* 401 U.S. at 568-69.

[6] Accordingly, if Officer Gray had been sued individually, she would be entitled to qualified immunity. *See Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013) ("Qualified immunity shields law enforcement officers . . . provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware.").

[7] "Ps' Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. (Doc. 23.)

incident is insufficient to establish a Village policy or practice, and no such policy or practice may be inferred where no other such incidents on the part of Village employees exist.

Plaintiffs also fail to raise any genuine issue of material fact as to the Village's failure to train Officer Gray.  Plaintiffs admit that Officer Gray received at least some training in the execution of arrest warrants.  (Ps' Reply 56.1, Counter Statement ¶ 34.)  Although she was not trained to "view the warrant, ascertain its purpose and directive, confirm the identity of the place or location to be searched and retreat from the location once an error is identified," Plaintiffs – as discussed above – cite no authority requiring officers to undertake such steps when they are not responsible for the operation.  (Ps' Opp. 5.)  The law allows officers to rely on others and certainly does not require all officers assigned to a team executing a warrant to personally verify the particulars of the warrant application or the plan for its execution.

Further, for Plaintiffs to successfully assert a *Monell* claim based on the Village's failure to train Officer Gray, they also must establish that this failure amounts to deliberate indifference. *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  To do so, they must identify a precise deficiency in the training program, and prove that the deficiency "actually caused or was the moving force behind the alleged violations." *Id.* at 193.  Frankly, it hardly requires specialized training to know that one should go to the right location when executing a warrant, so the failure-to-train theory amounts to an unsupportable argument that a mistake must be the result of failure to train. *See City of Canton*, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do so says little about the training program or the legal basis for holding the city liable.").  In any event, Plaintiffs' theory is that Gray should have checked the DEA's paperwork and information, but there is no indication of any previous problems in that regard which could have put the

Village on notice that further training was necessary to avoid constitutional deprivations. *See Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). Therefore Plaintiffs have not demonstrated the requisite link between any training deficiency and the ultimate injury, and Plaintiffs cannot succeed on a failure-to-train theory.

Plaintiffs additionally do not present facts suggesting any failure by the Village to supervise Officer Gray. As both parties agree, Officer Gray's understanding of her assignment was to "be present" during the execution of the arrest warrant. (Ds' Reply 7; Ps' Opp. 5.)[8] Indeed, by the undisputed account of the incident, Gray did little more than "be present" in the home. In order to prevail on a failure-to-supervise theory of liability, Plaintiffs must show that the failure was so "patently inadequate" as to amount to deliberate indifference. *Reynolds*, 506 F.3d at 192-93; *see Sarus v. Rotundo*, 831 F.2d 397, 401 (2d Cir. 1987) (mandating proof of a "severe" failure of supervision). Plaintiffs again point to a lack of Village policy requiring all officers to scrutinize and personally validate a warrant application; as explained above, however, no court has recognized such a policy. (Ps' Opp. 5.) That Officer Gray was not provided with a physical description of the target, and rather seems to have simply been directed to ride along with DEA agents whose competence there was no apparent reason to doubt, falls far short of the extreme lack of supervision Plaintiffs must demonstrate. As such, Plaintiffs have failed to adduce facts from which a jury could conclude that the Village's alleged failure to supervise Officer Gray was tantamount to deliberate indifference. Further, there is – as with failure to train – no indication that there was any history that would have put a supervisor on notice that sending Gray on the operation would result in a constitutional deprivation. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 n.8 (2d Cir. 2004).

---

[8] "Ds' Reply" refers to Defendants' Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment. (Doc. 21.)

Because Plaintiffs cannot demonstrate any basis for *Monell* liability, Defendants' motion for summary judgment on Plaintiffs' claims arising under 42 U.S.C. § 1983 is granted.

C.   Plaintiffs' State-Law Claims

A federal court may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).  A district court may decline to exercise its supplemental jurisdiction where all claims over which the court has original jurisdiction have been dismissed, *see id.* § 1367(c)(3), and must balance judicial economy, convenience, fairness, and comity in exercising this discretion, *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988).  It is appropriate to decline to exercise supplemental jurisdiction when the federal claims are dismissed before trial, *see Cohill*, 484 U.S. at 350 n.7; *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006), and this Court routinely does so.  I therefore decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

**III.   Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED.  All claims against the Spring Valley Police Department and the John Does and Jane Does are dismissed.  Plaintiffs' federal claims against the Village of Spring Valley are dismissed with prejudice, and their state-law claims against the Village of Spring Valley are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 14), and close the case.

**SO ORDERED.**

Dated: October 23, 2013
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.